## LUDEAU v. PHŒNIX INS. CO. et al.
### No. 11909.

Court of Civil Appeals of Texas. Galveston.

Oct. 9, 1947.

Rehearing Denied Oct. 30, 1947.

Quinton Wright, of Houston, for appellant.

Chilton Bryan and David Bland, both of Houston (Bryan & Bryan, of Houston, of counsel), for appellees.

GRAVES, Justice.

This appeal is from a judgment of the 51st District Court of Harris County, entered at the close of the testimony for appellant only, wherein the Court withdrew the cause from the jury, by instructing a verdict in favor of the appellee, upon its holding that no material issues-of-fact in support of appellant's declared-upon cause-of-action had been raised by his evidence.

The appellant sued upon a policy of inland marine insurance, issued by the appellee to him against the loss of or damage to a 1.93-carat diamond set in a ladies' platinum mounting, for the sum of $1500, the policy being in form what is commonly known as an "all-risk" one—that is, it insured against all perils rather than against any specifically-named ones.

What are thought to be the controlling facts presented, all of which were either undisputedly, or conclusively, supported by the evidence the Court heard, were, in substance, these:

"The insurance policy made a basis of this law suit protected appellant from loss or damage in accordance with the terms of such policy from noon, June 9, 1945, to noon, June 9, 1946. Prior to the time of taking out this insurance, appellant was the owner of a diamond, which was set in a man's-ring, however, shortly before the taking-out of this policy of insurance, this diamond was transferred to a lady's mounting. Appellant became engaged to marry Miss Ann Stueber, and on or about the 14th or 15th of June, 1945, presented, or gave, to Miss Stueber the above mentioned ring as an engagement-ring. The engagement-ring was given to Miss Stueber in such a manner that it was in her possession and control. While Miss Stueber was in Galveston, on or about June 20, 1945, the engagement-ring was stolen, under the circumstances related in Miss Stueber's testimony. Shortly after June 20, 1945, Dr. J. E. Ludeau refused to carry out the marriage-agreement, even though Miss Stueber, the party to whom he was engaged, was ready, willing, and able to carry out such agreement.

"Appellant has never made demand upon Miss Stueber for a return of the ring, or for its value, nor at any time did appellant tell her that he wanted the ring back. At the time the engagement-ring was lost, or stolen, a marriage license had already been procured by appellant licensing him to marry Miss Stueber, his fiancee. Appellant did not apprise appellee, or any of appellee's agents, of the fact that the en-

gagement-ring was given to Miss Stueber as an engagement-ring, until after his claim under this policy was made."

In inveighing here against the judgment so adverse to him below, appellant earnestly contends, in boiled-down substance, that the Court erred in so directing a verdict against him, on these two main grounds:

(1) That his evidence discloses, to say the least of it, that the title to the ring when lost was either wholly in him, or that he had an insurable-interest therein;

(2) That proper proof of the loss declared upon had been made by the appellant, in the manner and within the time required prior to the filing of his suit herein, or in any event, the appellee had been shown to have waived any insufficiency in such proof.

Neither of these presentments, it is determined, should be sustained. Since, by apparent concession of both sides, the first of them embodies the controlling question between the parties, appellant's position upon it is thus detailed: He urges that, as the ring had so been presented or given to Miss Stueber by Dr. Ludeau as "an engagement-ring," the title thereto, or at least an insurable-interest therein, remained in him; that there was no ordinary gift of it by him to her, but at most a mere pledge or conditional presentment of it to her, conditioned upon their later consummating their engagement to be married; wherefore, the legal relationship of pledgor and pledgee only was created between them, within the rules of law relating thereto, as declared in such authorities as these: San Angelo Hilton Hotel Co. v. B. B. Hail Building Corp., Tex.Civ.App., 60 S.W.2d 1049; 21 R.C.L. 649, Sec. 15; First National Bank v. McCamey, 130 Tex. 148, 105 S.W.2d 879; Shaw v. Christie, Tex.Civ. App., 160 S.W.2d 989; 33 Tex.Jur., p. 682, and 21 Tex.Jur., p. 21.

This Court, however, is unable to follow that line of reasoning, concluding rather that the facts here present no analogy to those creating such relationship of pledgor-pledgee; on the contrary, as it reads the authorities ruling the legal equivalent of these facts, it is an established principle that even a conditional-gift, such as that so contended for by the appellant in this instance, when made between those living, confers a title to the object given at the time of its delivery into the possession of the donee.

While it is thought our Texas authorities are not to the contrary, as hereinafter indicated, perhaps the most concretely applicable one of those general holdings so declaring the law with reference to such conditional gifts, that of Urbanus v. Burns, et al., 300 Ill.App. 207, 20 N.E.2d 869, 871, by the Appellate Court of Illinois, is the one most directly in point. That Court said in so declaring the law:

"At the time the articles of jewelry were presented, both parties knew that according to the course of nature, either one of them might die before the marriage was consummated. Had Loretta lived and had plaintiff declined to marry her, he could not recover the jewelry or the value thereof. Had he died before they became married, his personal representatives could not recover the jewelry for the benefit of his estate. At the time of her death, Loretta had a right to the possession of the jewelry as against all persons. She did not at anytime break the contract to marry plaintiff or refuse to marry him. She was the owner of the jewelry at the time of her death and she did not breach the marriage troth. Hence, plaintiff had no right to claim the recovery of the same as against her brother and sisters or personal representatives."

Other authorities to the same effect are these: Rockafellow v. Newcomb, 57 Ill. 186; Schultz v. Duitz, 253 Ky. 135, 69 S. W.2d 27, 92 A.L.R. 600; Jacobs v. Davis, 2 K.B. 532; and Cohen v. Sellar, 1 K.B. 536.

The quoted holding from the Urbanus case is thought to control this decision, since no other in Texas, or elsewhere, involving the precise equivalent of the same state of facts has been brought to the Court's attention.

If the quoted holding is the law with reference to the state of the title to the ring here involved at the time of its loss, the Trial Court's presumed determination that appellant was then shown to have had no

insurable-interest in it is fully sustained by all the authorities; indeed, its judgment against appellant was required if he had no interest therein, because he could have sustained no legal loss. Couch's Cyclopedia of Insurance Law, Vol. 5, Para. 974, and Texas Jurisprudence, Vol. 24, Para. 71, p. 770.

If the stated holdings are sound, as they are thought to be, it follows that appellant's second point of error—his claim that appellee waived any alleged failure to furnish appellee with proper proof of loss of the ring—becomes immaterial.

These conclusions require an affirmance of judgment. It will be so ordered.

Affirmed.